AL PIERCE, appellee, v. INCORPORATED TOWN OF LA PORTE CITY, appellant.

No. 52275.

DECEMBER 13, 1966.

Wagner & Wagner, of La Porte City, for appellant.

Robertson & Robertson, of La Porte City, for appellee.

SNELL, J.—This case involves the constitutional validity of a town ordinance relating to trailer parks.

Defendant, Incorporated Town of La Porte City, is a municipal corporation. Plaintiff is a resident and owner of real property therein.

In 1962 the town council adopted Ordinance No. 123 entitled "An Ordinance Prescribing Requirements for Occupancy of Trailers and Location and Operation of Trailer Parks." The ordinance contains fourteen numbered sections and numerous subsections. Although quite comprehensive in its provisions it should be noted that it is not, and is not claimed to be, a zoning ordinance. It was stipulated that in enacting the ordinance there was no compliance with the municipal zoning law found in chapter 414, Code of Iowa. There is no claim that the town has ever been zoned for any purpose or has any building code. Validity is claimed under the general police power of the town.

Although other sections of the ordinance are attacked the decision of the trial court dealt with section 5. This section of the ordinance is as follows:

"*Application for License:* Any person desiring to operate a trailer park shall first file application for approval of site location with the Town Clerk. Applications shall be in writing, signed by the applicant, and shall contain the name and address of applicant and the location and legal description of the site, and shall have attached thereto the written consent of seventy-five (75%) per cent of the owners of property other than the owners of property any part of which is used or to be used for trailer park purposes within two hundred (200) feet of any part of the premises to be occupied for such use.

"After consideration of the application, the Town Council shall then grant or deny the application according to its sound discretion.

"When approval of the site is thus obtained, the person desiring to operate a trailer park shall then file application for a trailer park license with the Town Clerk. Applications

shall be in writing signed by the applicant, and shall contain the following:

"a. The name and address of applicant.

"b. The location and legal description of the trailer park.

"c. A complete plan of the park showing compliance with paragraph 6 hereof.

"d. Plans and specifications of all buildings and other improvements, such as sewage, water supply and sanitary facilities constructed or to be constructed within the park.

"e. Such further information as may be requested by Town Health officials to enable them to determine if the proposed park will comply with legal requirements.

"The application and all accompanying plans and specifications shall be filed in duplicate with the Town Clerk. The Town Council shall inspect the proposed plans and specifications and make a study as to the compliance of the park plans with the provisions of this ordinance and all other applicable ordinances and statutes. The Town Council shall then approve the application if they find that the proposed plans and specifications conform to the provisions of this ordinance and, upon completion of the park according to the plans and specifications, the Town Council shall approve and the Town Clerk shall issue the license."

Subsequent to the adopting of the ordinance but prior to February 23, 1965, plaintiff, contemplating the operation of a trailer park, filed with the council "Application for trailer park license site approval." The application described the real estate to be used, asked for approval by the council and stated that attached thereto was a statement signed by 75 percent of the property owners located within two hundred feet of the described real estate. One signature appears on the consent sheet but there is no claim of compliance with the 75 percent provision. The town council took no action whatsoever.

Plaintiff, alleging that he faced irreparable harm and injury, started this action for declaratory judgment to determine "the effect, validity, lawfulness, and constitutionality of the said ordinance."

Issues were joined and the case was tried. The court found

that the ordinance was violative of the Federal and State Constitutions and was unconstitutional.

Defendant-town has appealed.

We agree with the trial court.

I.   Certain uncontroverted matters should be kept in mind.

The ordinance was not adopted pursuant to any zoning laws. There is no statute specifically granting any such authority to a town council as appears here. The defendant relies on general statutes and police power. There is no claim that a trailer park is illegal or a nuisance per se. There are no standards of any kind under which the council will act on an application for approval of a park site. There is no claim that a council may not under a proper ordinance adopt reasonable regulations.

We have in recent months and years so extensively considered the constitutionality of legislation that repetitious review in this case is unnecessary. The answer is clear and is found in our own pronouncements.

II.   The ills found in this ordinance would not all be cured by its deletion but a fatal provision is found in section 5, quoted supra, wherein it is said: "After consideration of the application, the Town Council shall then grant or deny the application *according to its sound discretion.*"   (Emphasis added.)

Central States Theatre Corporation v. Sar, 245 Iowa 1254, 66 N.W.2d 450, involved the licensing and regulation by township trustees of moving picture shows. The granting of a license was discretionary. The situation was analyzed, the authorities cited and quoted. We quote excerpts from our opinion and the authorities quoted therein without repeating the citations.

"The right to operate a legitimate business is one which the state may regulate but may not prohibit or unreasonably restrict. We have often so held. * * *

" "* * * cities may not declare a retail grocery store to be a nuisance per se, or prohibit the erection thereof in a residential district solely because it offends the aesthetic taste of those residing in the vicinity.' * * *

" 'Arbitrary and unreasonable restrictions upon the use and enjoyment of property, prohibition of use which does not interfere with the equally rightful use and enjoyment by others

1124

of their property, or with the paramount rights of the public, or deprivation of property without due process of law, cannot be sustained * * *.'

"* * *

█ " 'But, as we have said above, a regulatory statute enacted in the exercise of the police power must be reasonable. Its real purpose must be to protect the public health, morals or general welfare, and it must be reasonably required and suited to attain that purpose. It cannot masquerade as an exercise of the police power and arbitrarily invade personal rights or private property. It cannot disregard the constitutional guaranties.' " (Loc. cit. 1259)

"It is true the police power of the state permits the licensing and regulation of legitimate businesses where necessary for the public good. But this regulation must not be capricious, arbitrary or unreasonable. It must have some relation to the general welfare, and it may not ordinarily go to the extent of entire prohibition of operation of the business. A reading of the statutes under examination here—sections 361.1 and 361.3—makes abundantly clear their vulnerability to constitutional challenge. The first section provides that none of the enumerated businesses —among which we find 'moving picture show'—shall be operated outside cities or towns until a license is first procured therefor. Section 361.3 says that the granting of a license shall be discretionary with the township trustees. There are no standards fixed, no guideposts set up, no beacons lighted to show the trustees how far they may or may not go in granting or denying the license without which the stated businesses may not be operated. The trustees may, so far as the statute goes, deny any applicant a license for a good reason, for a bad reason, or for no reason. The discretion given them by the statute is unlimited; and so far as the record shows, that is the way they have exercised it. They denied the license to plaintiff without explanation. In doing this they were within the terms of the statute; and likewise in so doing they demonstrated the statute's offense against the due process clauses of the Federal and State Constitutions. If the state may not, by statute, prohibit or unreasonably restrict the operation of a legitimate business, as the authorities uniformly

hold, by what reasoning may it achieve the same result by leaving the life or death of the business to the uncontrolled discretion of a subordinate governmental division or an administrative body? The question answers itself." (Loc. cit. 1260 and 1261)

"A statute empowering a municipal corporation to prohibit or unreasonably restrict the operation of a legitimate business would transgress the constitutional requirements of due process just as would the same power delegated by statute to an administrative board. Power to violate the due process clauses is lacking in the legislative body no matter how it attempts to exercise it. * * *

"The granting of absolute power and unlimited discretion to deny a license to a legitimate business offends against due process. If reasonable standards within which the discretion * * * must be exercised were contained in the statute, and if such standards were properly followed, the matter would come under the heading of legitimate regulation rather than prohibition. * * * Neither the legislature by statute, a municipal corporation by ordinance or resolution, nor an administrative board exercising police powers may deprive the owner or operator of a legitimate business of his property by prohibition of his operation or by capricious and unjust regulation thereof." (Loc. cit. 1262)

We paraphrase from page 1266. We are cognizant of the fact that the ordinance was enacted for a meritorious purpose. The location, construction, operation and supervision of trailer parks pose problems. A good case may be made for a proper ordinance relative thereto but it must be reasonable and not subject to arbitrary, capricious, unreasonable, or discriminatory interpretation or enforcement. We do not infer that the council of La Porte City has or would so act but the ordinance opens the door to such evils. The ordinance offends against the due process clause of both Federal and State Constitutions.

For other cases discussing discretionary power see Huff v. City of Des Moines, 244 Iowa 89, 56 N.W.2d 54; Downey v. City of Sioux City, 208 Iowa 1273, 227 N.W. 125; Plaza Recreational Center v. Sioux City, 253 Iowa 246, 111 N.W.2d 758; Chicago,

R. I. & P. R. Co. v. Liddle, 253 Iowa 402, 112 N.W.2d 852; Lewis Consolidated School District v. Johnston, 256 Iowa 236, 127 N.W.2d 118.

These cases involve delegation of discretionary power and the requirement for standards. The Liddle case also refers to situations where the discretionary power may be retained by the legislative body but we are not prepared to hold that the retention of such authority as is involved in the case before us can be approved.

We need not discuss the other attacks upon the ordinance.

The case is—Affirmed.

All Justices concur except Thornton, J., not sitting, and Stuart, J., who takes no part.